IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | |
| | § | |
| 5.70 ACRES OF LAND, MORE OR LESS, | § | CASE NO. 7:08-CV-202 |
| SITUATE IN STARR COUNTY, | § | |
| TEXAS AND PABLO A. RAMIREZ, | § | |
| INC., ET AL. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 71.1(h)
MOTION AND MEMORANDUM TO EXCLUDE THE
<u>EXPERT TESTIMONY OF MIKE MIGGINS</u>**

Defendant, Pablo A. Ramirez, Inc., files this response to Plaintiff's Motion to Exclude the Expert Testimony of Mike Miggins and would show as follows:

### I.   Introduction

1.   This is a condemnation case filed under 40 U.S.C. § 3114. The only remaining issue for trial is the just compensation owed by Plaintiff for its taking. Plaintiff hired John Minor, an independent fee appraiser, to estimate compensation. Defendant engaged Mike Miggins, also an independent fee appraiser. The parties' positions on compensation are summarized on the next page:

|  | Minor | Miggins |
|---|---|---|
| **Whole Property (Acres)** | **93.000** | **143.530** |
| **Whole Property ($/Acre)** | **$3,500** | **$25,000** |
| Whole Property ($) | $325,500 | $3,588,250 |
| Remainder After (Acres) | 87.350 | 137.880 |
| Remainder After (Square Feet) | 3,804,966 | 6,006,053 |
| Remainder After - North (Acres) | 65.177 | 115.707 |
| Remainder After - North ($/Acre) | $3,500 | $25,000 |
| Remainder After - North ($) | $228,120 | $2,892,675 |
| Remainder After - South (Acres) | 22.173 | 22.173 |
| **Remainder Damages - South (%)** | **20.00%** | **95.00%** |
| Remainder After - South ($/Acre) | $2,800 | $1,250 |
| Remainder After - South ($) | $62,084 | $27,716 |
| Remainder After ($) | $290,204 | $2,920,391 |
| Total Compensation ($) | $35,296 | $667,859 |

Miggins's appraisal report is attached to Plaintiff's motion; a true and correct copy of Minor's appraisal report is attached as Exhibit A hereto. As indicated, the principal differences between the appraisals are (1) the market value of the whole property before the taking ($3,500 per acre vs. $25,000 per acre); and (2) the extent to which the property orphaned to the south of the border barrier is damaged (20% vs. 95%). The appraisers additionally disagree on their identification of the whole property, sometimes referred to as the relevant or "larger" parcel. Miggins considers the whole property to be the entirety of Defendant's ownership as surveyed, consisting of 144.380 acres of land; Minor limited his larger parcel to an estimated 93 acres located south of the flood plain line, excluding the most valuable portion of the property fronting on US Highway 83.

      2.      Plaintiff filed its motion to exclude Miggins's appraisal report, claiming that it lacks a credible market analysis, omits a larger parcel analysis, contains a flawed highest and best use analysis, and employs an inappropriate methodology. Plaintiff's motion fails

to identify any flaws of Miggins's anticipated testimony that would render it inadmissible. Some of the alleged flaws recited in Plaintiff's motion are refuted by a plain reading of Miggins' summary appraisal report and deposition testimony. Others are best characterized as minor ways in which Miggins's report deviates from the guidelines for government appraisers, despite the fact that these guidelines do not apply to him and do not affect the substance of his conclusions. Still other criticisms would hold Miggins to an impossibly high standard of proof and precision for supporting his highest and best use and value conclusions. The appraisal of real estate is not an exact science, and professional judgment, when combined with market data, is a valid component of expert opinion.

3. Plaintiff is unable to make any meaningful connections between its criticisms of Miggins and the legal standards for excluding expert testimony and so resorts to the extraordinary claim that "Miggins' opinions of value were reached without regard to any recognized procedure or reproducible methodology." Motion at 14. This claim is clearly inapplicable to Miggins's opinions in this case, which were developed pursuant to the well-established sales comparison approach to land valuation, one of the most common and accepted appraisal methodologies, in keeping with the detailed guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP). Miggins properly applied standard appraisal methodology to this case assignment, and justice requires that his opinion be presented to the jury so they can make a balanced determination of just compensation. Any valid criticisms of Miggins's appraisal relate to the weight and not the admissibility of his evidence.

## II. Standard for Expert Testimony

3. The Federal Rules of Evidence provide that an expert witness may testify if:

> (a) scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The trial court makes initial determinations as to the admissibility of evidence. FED. R. EVID. 104(a). However, in making these determinations, the district court should "approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* "This is especially true in an eminent domain action, in which expert opinion testimony acquires special significance where the sole issue is the value of condemned property." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation and alteration marks omitted). As the Fifth Circuit has recognized:

> The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed

> experts can influence substantially the amount of compensation set by the factfinder. . . . Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.

*Id.* at 1078 (quoting *United States v. 68.94 Acres of Land*, 918 F.2d 389, 393 (3rd Cir. 1990)). Moreover, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596.

4. In *Daubert*, the Supreme Court held that the federal rules of civil procedure superseded the common-law standard for the admissibility of expert scientific testimony and articulated factors relevant to assessing the reliability of scientific testimony under Rule 702. *Id.* at 587, 593-94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court clarified that *Daubert* applies to all expert testimony but that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." 526 U.S. 137, 141 (1999). For appraisal experts in condemnation cases, the ultimate inquiry is whether the testimony is "entirely speculative." *United States v. 14.38 Acres of Land*, 80 F.3d at 1077; *see also United States v. 320.0 Acres of Land*, 605 F.2d 762, 813-14 (5th Cir. 1979).

### III. Standard for Appraisal Methodology

6. Appraisal is the conventional method of determining the just compensation for property taken by the government. *United States v. An Easement & Right-Of-Way over*

5

*0.24 Acre of Land*, No. 3:18-CV-00169-SA-RP, 2019 U.S. Dist. LEXIS 137891, at *10-11 (N.D. Miss. 2019). In federal condemnations, just compensation must be "equivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking." *United States v. 8.41 Acres of Land*, 680 F.2d 388, 392 n.5 (5th Cir. 1982) (citing *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969)). In other words, just compensation must be equivalent to the figure determined by the "before-and-after method." *Id.*

7.  "However, it may be more practical in a partial takings case to examine the lost value of the land actually taken and then determine whether the landowner is entitled to an additional amount of 'severance damages' for any amount by which the taking has diminished the value of the remainder." *United States ex rel. TVA v. An Easement & Right-Of-Way over 6.09 Acres of Land*, 140 F. Supp. 3d 1218, 1245 (N.D. Ala. 2015). "Indeed, the 'before-and-after' approach and the 'value-plus-severance' approach are in substance just different ways of expressing the same idea: that the landowner in a partial takings case is entitled to just compensation for the lost value to all of his land, not just the parcel actually taken." *Id.* (citing *Slattery Co. v. United States*, 231 F.2d 37, 44 (5th Cir. 1956)); *see also Sabal Trail Transmission, LLC v. 0.589 Acres of Land*, No. 3:16-cv-277-J-34JBT, 2018 U.S. Dist. LEXIS 129709, at *28-29 (M.D. Fla. 2018).

8.  "Market value" has been defined as "what a willing buyer would pay in cash to a willing seller." *United States v. 320.0 Acres of Land*, 605 F.2d at 781 (citing *United States v. Miller*, 317 U.S. 369, 374 (1943)). Since a hypothetical buyer would look at potential uses as well as current uses, market value must be determined in light of a

6

property's "highest and best use"—the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future." *Id.* (citing *Olson v. United States*, 292 U.S. 246, 255 (1934)).

9. The Uniform Standards of Professional Appraisal Practice (USPAP) "represents the prevailing professional standards for real property appraisal." *Powell v. Tosh*, 942 F. Supp. 2d 678, 688 (W.D. Ky. 2013). U.S. government appraisers are additionally required to follow the Uniform Appraisal Standards for Federal Land Acquisitions (UASFLA), commonly known as the Yellow Book. *Hardy v. United States*, 141 Fed. Cl. 1, 10 (2018). "The Yellow Book applies only to appraisers hired by the federal government for condemnation purposes; it is not mandatory with respect to appraisers not hired by the government." *Id.* at 32.

10. The Fifth Circuit has stated that it is unaware of authority for the proposition that "strict compliance with USPAP is a pre-requisite for admissibility" and noted that in the absence of such authority, any deviations from USPAP "concern only the report's credibility (*i.e.*, the weight it should be given)." *Whitehouse Hotel Ltd. P'ship v. Commissioner*, 615 F.3d 321, 332 (5th Cir. 2010). For appraisals prepared under Yellow Book standards, any deviations similarly pertain to credibility. *Hardy*, 141 Fed. Cl. at 32.

        **IV.**    **Miggins's Appraisal Did Not Omit Required Elements.**

10. Plaintiff argues that Miggins's report and testimony must be excluded because "required elements of a valid and reliable appraisal are absent." Motion at 8. In this section of its Motion, Plaintiff only actually alleges that one element is absent—a "larger parcel analysis" (other elements are allegedly "flawed" or not "credible"). *Id.* A

7

"larger parcel," as defined by the Yellow Book, is "the tract or tracts of land that possess a unity of ownership and have the same, or an integrated, highest and best use." Yellow Book 4.3.3, p. 110. Accordingly, Miggins conducted a larger parcel analysis as part of his highest and best use analysis, and he described his larger parcel analysis in detail during his deposition. Exhibit B at 44-45. Miggins did not use the term "larger parcel analysis" in his appraisal report, but this is immaterial, as he was not required to do so. *See generally* USPAP.[1] Plaintiff's statement that "[l]ands with dissimilar uses are not part of the same larger parcel" is an incomplete summary of the Yellow Book provision cited, which is referring to "the same or an integrated *highest and best use*." Yellow Book 4.3.4.1, p. 111 (emphasis added). More generally, Plaintiff's characterization of the larger parcel analysis as a step that precedes and determines the highest and best use analysis would guarantee under-compensation in many cases.[2] Miggins properly conducted the larger parcel analysis in concert with the highest and best use analysis, as contemplated by the Yellow Book and other authorities.

11.     Oddly, Plaintiff also alleges in the "Larger Parcel" section of its Motion that "Miggins' appraisal fails to recognize that two-thirds of the Subject Property is located within the floodplain and/or the International Boundary and Water Commission ('IBWC')

---

[1] As mentioned, Yellow Book guidelines only apply to government appraisers. Moreover, the Yellow Book "has roundly been criticized by various commentators." *Wash. Metro. Area Transit Auth. v. United States*, 54 Fed. Cl. 20, 32 n.18 (Fed. Cl. Aug. 15, 2002). The Court of Federal Claims has said "it is entitled to little more weight than a brief filed by [the government]." *Id.*

[2] Plaintiff's asserted larger parcel illustrates the danger of this. Plaintiff defines the larger parcel as only the portion of the property currently undeveloped and within the flood plain, which is not a larger parcel that a "willing seller" would ever separate from the more valuable upland portion. *See United States v. 320.0 Acres of Land*, 605 F.2d at 781.

designated floodway." Motion at 8-9. This is demonstrably false. Page 12 of Miggins's appraisal report is a full-page map of the property showing that roughly two-thirds is within the floodplain, and Page 11 states that "[b]ased on our review of FEMA Flood Panel No. 48427C0520C, the largest southern portion of the property appears to be in Zone A." Moreover, Miggins's consideration of the floodplain was discussed at length in his deposition. Exhibit B at 45-47, 50-51, 54-59, 61-64, and 97-100.

12. Plaintiff alleges that the "missing" elements of Miggins's appraisal result in a flawed highest and best use conclusion that justifies exclusion. In the Fifth Circuit, "if suitability for a particular use might reasonably affect fair market value—in the sense that a just compensation award based in part upon the potential for that use would not be invalid as a matter of law—then evidence pertaining to that use must be admitted for consideration by the trier of fact." *United States v. 320.0 Acres of Land*, 605 F.2d at 817-18. An award based on a potential use is not "invalid as a matter of law" if the potential use is "feasible and reasonably probable." *Id.* at 815 (citing *McCandless v. United States*, 298 U.S. 342, 346 (1936)). In *McCandless*, the trial court excluded testimony that the subject property could be converted from ranchland to more profitable use as a sugar plantation if it was irrigated with outside water. 298 U.S. at 345-46. The Supreme Court reversed, holding that the landowner was entitled to present evidence as to "the most profitable use to which the land can probably be put in the reasonably near future" and that "[a]n offer of proof cannot be denied as remote or speculative because it does not cover every fact necessary to prove the issue." *Id.* at 345-46.

9

13. "It must be remembered that market value is always based on hypothetical conditions and it is never necessary to show that a willing buyer and willing seller do in fact exist." *Wash. Metro. Area Transit Auth.*, 54 Fed. Cl. at 32 n. 18. The landowner does not have to show an "imminent demand" for the proposed use, he just has to show that there is a "reasonable probability" of that demand "at a near enough point in the future to affect the current value of the property." *United States v. 69.1 Acres of Land*, 942 F.2d 290, 294 (4th Cir. 1991). "And it is for the trier of fact to decide—on the basis of all the evidence (including rebuttal evidence) and upon proper instructions—whether the property has any additional market value because of its suitability for this use." *United States v. 320.0 Acres of Land*, 605 F.2d at 817-18. A proffered potential use should only be excluded if "no reasonably minded trier of fact faithfully applying the law could find that it represents an element of fair market value." *Id.* at 818.

14. The factfinder is entitled to consider Miggins's concluded highest and best use. Miggins's appraisal did not "lack[] a credible market analysis." Motion at 10. Miggins identified the characteristics of the area and neighborhood that directly influence the subject property and, more specifically, those characteristics of the market showing demand for mixed-use development of similar properties. For example, Miggins's work file contains research on a mixed-use development in Rio Grande City that shares many similarities with the subject. The property is similar in size to the subject, is located along U.S. Highway 83, and contained 150 acres of floodplain when discussions about mixed-use development started around 2009. *See* Exhibit C. Ninety acres was subsequently removed from of the floodplain through redistribution of soil. *See id.* Miggins's concluded

highest and best use recognizes the potential of the subject property, and evidence of this use is not subject to exclusion simply because few comparable developments exist in the area. As Miggins explained at his deposition, the scarcity of properties with comparable development potential contributes to the subject's market value. Exhibit B at 70-71. Further, the HEB lease, which Plaintiff presents as an obstacle to development, is in fact proof of demand for the precise type of development Miggins envisions for the subject property—a mixed-use development for which HEB would be an ideal anchor tenant. Exhibit B at 65-66.

15. The 11th Circuit Court of Appeals rejected very similar arguments recently in *United States v. Easements & Rights-of-Way over a Total of 15.66 Acres of Land*, 779 Fed. App'x. 578, 586 (11th Cir. Ga. June 19, 2019) (unpublished). In that case, the court rejected the government's argument that the landowner's valuation was flawed because his appraiser did not have a "market study" to support his opinion that an investor would consider the residential potential of the subject property, a Georgia farm 95% in the floodplain. *Id.* at 579, 584-86. The court noted that the landowner's appraiser had over 30 years of experience and supported his overall compensation opinion with land sales, and there was "no reason why the jury could not have credited his testimony" that investors would be interested in the property's residential potential. *Id.* at 586.

### V. Miggins's Appraisal Employed Appropriate Methodology.

16. Plaintiff argues that Miggins's testimony should be excluded because he developed an opinion of value using the "improper state rule method" as opposed to the "required before and after method." Motion at 11. Plaintiff "attempts to manufacture a

disagreement that does not exist." *Vector Pipeline, L.P. v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 952 (N.D. Ill. 2001). The Fifth Circuit Court of Appeals "requires the exclusive use of the before-and-after method of valuation," articulated as follows:

> (T)hat the sum of the compensation for the damages to the strip of land which is subject to condemnation and the damage to the remaining tract shall be the equivalent to the compensation determined by comparing the fair market value of the entire tract affected by the taking before and after the taking; that is to say, it should be equivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking.

*United States v. 8.41 Acres of Land*, 680 F.2d at 392 n.5 (citing *Transwestern Pipeline Co.*, 418 F.2d at 21)).

17. It is evident from the summary of compensation on page 39 of Miggins's report that his methodology is the equivalent of the before-and-after method. The compensation summary shows that he calculated the "fair market value of the whole immediately before the taking" ("Whole Property Before Acquisition") and the "fair market value of what remains after the taking" ("Remainder After Acquisition"). The difference between these two figures, $3,609,500 and $2,941,641, is equal to his total compensation conclusion, $667,859. The summary chart clearly illustrates that the same result obtains when Miggins's calculations of the "Part to Be Acquired" and "Net Damages or Enhancements" are summed.

18. Many courts have recognized that the "state rule method" that Miggins followed is the equivalent of the "before-and-after method," as the method that Miggins followed included a valuation of the whole before and remainder after. *See, e.g.*, *Sabal*

*Trail Transmission*, 2018 U.S. Dist. LEXIS 129709, at *28-29 ("the 'before-and-after' method is simply part of the 'taking-plus-damages' standard); *see also United States ex rel. TVA*, 140 F. Supp. 3d at 1245. Miggins's valuation approach is a far cry from the approach rejected in the case cited by Plaintiff, in which the landowner valued only the part taken as a separate economic unit from the whole property. *United States v. 4.27 Acres of Land*, 271 F. App'x 424, 425-26 (5th Cir. 2008) (unpublished). Further, Plaintiff's distinction between these methodologies is a non-issue because Plaintiff has "fail[ed] to tie its claims about the controlling law to any specific difference in outcomes in damages evaluation." *Vector Pipeline, L.P.*, 157 F. Supp. 2d at 952.

### VI. Miggins's Value Conclusions Are Sufficiently Supported.

19. Plaintiff alleges that Miggins fails to "support his valuation figures with sufficient facts or meaningful analysis." Miggins used one of the most widely accepted appraisal methodologies, the land sales comparison approach. *See* Appraisal Report at 20; *Buchanan Energy v. Lake Bluff Holdings*, No. 15 CV 3851, 2017 U.S. Dist. LEXIS 51403, at *15 (N.D. Ill. 2017); *United States ex rel. Tva*, No. 4:16-CV-0325-HLM, *2019 U.S. Dist. LEXIS 230392*, at *20 (N.D. Ga. 2019); *Hirsch v. Dep't. of Treas.-IRS (In re Hirsch),* 351 B.R. 291, 297 (Bankr. E.D.N.Y. 2006). Following the land sales comparison approach, Miggins selected sales of properties comparable to the subject, made qualitative adjustments to them based on various elements of comparison, and then bracketed the adjusted results before making a final value determination accounting for each sale's unique characteristics relative the subject. Plaintiff's primary criticism centers around

Miggins's final reconciliation of land value and assignment of a discount figure to the property's southern remainder after the taking.

20. Under the sales comparison approach, "[r]eliable results can usually be obtained by bracketing the subject between comparable properties that are superior and inferior to it." *McCann Holdings, Ltd. v. United States*, 111 Fed. Cl. 608, 623 (2013). A qualitative approach to comparing the selected sales may be superior to a quantitative approach because it "recognizes the inefficiencies of real estate markets and the difficulty in expressing adjustments with mathematical precision." *Id.* (citing Appraisal Institute, *The Appraisal of Real Estate* 320 (13th ed. 2008)). The appraisal of real estate is "more an art than a science; it is incapable of mathematical precision and implicates methods of judgment." *United States v. 0.376 Acres of Land*, 838 F.2d 819, 825 (6th Cir. 1988) (citing *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313 (8th Cir. 1986)). As the Fifth Circuit Court of Appeals has emphasized, "there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking." *United States v. 14.38 Acres of Land*, 80 F.3d at 1077. Miggins's opinion of the land value of the property was developed pursuant to an accepted methodology and is supported by land sales. The fact that his final reconciliation of those sales involved professional judgment that cannot be precisely quantified is no basis for exclusion.

21. Miggins's analysis of damage to the property's southern remainder is also sufficiently supported. As described in his deposition and report, Miggins concluded based on sales data that property similar to the southern remainder was not marketable and was

best described as a non-economic unit. A discount of around 95% is an appropriate and accepted way to account for the very limited value remaining in such property. *See, e.g.*, *United States ex rel. TVA v. An Easement & Right-Of-Way over 6.09 Acres of Land*, 140 F. Supp. 3d at 1247 (where the government's own expert applied a 96% discount rate to an "uneconomic remnant").

## VII. Conclusion

22. Plaintiff claims that "[s]ince Miggins' opinions of value were reached without regard to any recognized procedure or reproducible methodology, his testimony is unreliable and inadmissible." Motion at 14. Miggins used one of the most recognized and reproducible appraisal methodologies, in fact the same methodology used by Plaintiff's expert. The professional judgment he exercised in his appraisal is unavoidable in a field that is not an "exact science." Miggins considered the fact that land comparable to the subject was appealing to mixed-use developers around the date of taking in this case, and the jury is entitled to consider this evidence as well. *See, e.g.*, *United States v. 320.0 Acres of Land*, 605 F.2d at 817-18. As the Fifth Circuit Court of Appeals has emphasized, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d at 1077. Plaintiff's criticisms fit squarely within the "general rule, [whereby] questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Id.* Plaintiff will have ample opportunity to attack the weight of Miggins's evidence through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

## VIII. Prayer

23. Wherefore, Defendant, Pablo A. Ramirez, Inc., respectfully requests this Honorable Court for an Order denying Plaintiff's Motion to Exclude the Expert Testimony of Mike Miggins, and for such other and further orders as may be necessary in connection with same.

Respectfully submitted,

MCFARLAND PLLC

/s/ Charles B. McFarland
Charles B. McFarland
State Bar No. 00794269
Federal ID No. 19305
cmcfarland@mcfarlandpllc.com
Marie D. Harlan
State Bar No. 24085953
Federal ID No. 2717232
mharlan@mcfarlandpllc.com
811 Louisiana Street, Suite 2520
Houston, Texas 77002
Tel 713.325.9700
Fax 844.270.5032

ATTORNEYS FOR DEFENDANT,
Pablo A. Ramirez, Inc.

CERTIFICATE OF SERVICE

I certify that on the 25th day of August, 2020, a true and correct copy of the foregoing was forwarded by electronic service to counsel for Plaintiff, Megan Eyes, Hilda M. Garcia Concepcion, and E. Paxton Warner.

megan.eyes@usdoj.gov

hilda.garcia.concepcion@usdoj.gov

paxton.warner@usdoj.gov

/s/ Charles B. McFarland
Charles B. McFarland