United States District Court
Southern District of Texas
**ENTERED**
August 31, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 7:08-cv-00202 |
| 5.65 ACRES OF LAND IN STARR | § | |
| COUNTY, TEXAS; and PABLO A. | § | |
| RAMIREZ, INC. | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers the "United States of America's Rule 71.1(h) Motion and Memorandum to Exclude the Expert Testimony of Mike Miggins"[1] and Plaintiff's response.[2] After considering the motion, record, and relevant authorities, the Court **DENIES** the United States' motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a land condemnation case commenced under the Declaration of Taking Act[3] concerning Tract RGV-RGC-1043 as described in the United States' Schedule CC and DD, approximately 5.65 acres of land in Starr County, Texas adjacent to the Rio Grande River (the "Subject Property").[4] Plaintiff United States initiated this case on July 22, 2008,[5] but the live pleading is the United States' "Amended Complaint in Condemnation" filed on February 15,

---

[1] Dkt. No. 49.
[2] Dkt. No. 52.
[3] *See* 40 U.S.C. §§ 3111–18.
[4] Dkt. No. 16-1 at 2–9.
[5] Dkt. No. 1

2017.[6] The United States also filed a declaration of taking[7] and notice of condemnation.[8] The United States represents that Defendant Pablo A. Ramirez, Inc. is the only party interested in the Subject Property and its condemnation.[9] The United States seeks in this case a fee simple interest,

> subject to existing easements for public roads and highways, public utilities, railroads and pipelines; excepting and excluding all interests in minerals and the rights appurtenant thereto; reserving the following rights and interests in the property being acquired by the United States as described herein: a perpetual right-of-way on both sides of the Federal border barrier for the purpose of gaining access to condemnee's land on the other side of the border barrier; and, the United States grants to the condemnee a perpetual right-of-way across other lands of the United States along and on both sides of the border barrier to reach and utilize the nearest border barrier gate for the purpose of accessing condemnee's lands on the other side. The purpose of this provision is to clarify that the United States is not prohibiting access to condemnee's remaining lands between the border barrier and the Rio Grande River, but is providing a permanent right-of-way to condemnee and all landowners similarly situated to access the nearest border barrier gate which allows entry to the other side of the border barrier from which unacquired land can be accessed.

> The estate taken excepts and excludes all interests in minerals; in water rights associated with or appurtenant to the land; and in water distribution and drainage systems, provided that any surface rights arising from the excluded interests in water distribution and drainage systems are subordinated to the construction, operation, and maintenance of the border barrier.[10]

The United States intends to use the Subject Property "to construct roads, fencing, vehicle barriers, security lighting, and/or related structures designed to help secure the United States-Mexico border within the State of Texas."[11] The United States initially deposited $22,100 in estimated just compensation for the taking,[12] then supplemented an additional $2,900,[13] for a total of $25,000. This Court granted the United States possession of the Subject Property subject

---

[6] Dkt. No. 16.
[7] Dkt. No. 17.
[8] Dkt. No. 18.
[9] Dkt. No. 16-1 at 13.
[10] *Id.* at 11.
[11] Dkt. No. 16 at 3, ¶ 4.
[12] Dkt. No. 4.
[13] Dkt. No. 31.

to certain conditions on April 2, 2019.[14] The parties appear to seek a jury trial on the remaining issue of just compensation.[15]

In advance of trial, Defendant filed its "Designation of Testifying Experts" and designated real estate appraiser Mike Miggins of Houston, Texas to be its expert.[16] The United States' motion requests the Court "exclude this appraisal report pursuant to Fed. R. Civ. P. 71.1(h), and Fed. R. Evid. 104(a) and 702 because the report contains fatal deficiencies, inappropriate methodologies, and lacks sufficient facts or data to support its valuation figures."[17] The United States also requests the Court exclude Mike Miggins's opinions, testimony, and arguments.[18] Defendant has responded[19] and the motion is ripe for decision.

## II. DISCUSSION

### a. Legal Standards

#### 1. *Just Compensation*

Under the Fifth Amendment to the United States Constitution, private property shall not be taken "for public use, without just compensation."[20] Just compensation is to be just to the landowner and to the public which must pay for the condemnation by eminent domain.[21] "Just compensation . . . means in most cases the fair market value of the property on the date it is appropriated."[22] "[T]he underlying principle is that the dispossessed owner 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole

---

[14] Dkt. No. 29.
[15] *See* Dkt. Nos. 45, 53.
[16] Dkt. No. 44.
[17] Dkt. No. 49 at 1.
[18] *Id.*
[19] Dkt. No. 52.
[20] U.S. CONST. amend. V (the Takings Clause).
[21] *Bauman v. Ross*, 167 U.S. 548, 574 (1897) (quoting *Searl v. Sch. Dist. No. 2, of Lake Cty.*, 133 U.S. 553, 562 (1890) (Fuller, C.J.)).
[22] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984).

but is not entitled to more.'"[23] "Under this standard [of fair market value], the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking."[24] "[I]n general, comparable sales constitute the best evidence of market value . . . the more comparable a sale is, the more probative it will be of the fair market value of the condemned property."[25] The best evidence are "sales from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking."[26] Other evidence of fair market value can come from evidence of other comparable sales and from expert testimony as to the value of the subject property.[27]

"In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is adaptable and needed."[28] "Ordinarily, the highest and best use for property sought to be condemned is the use to which it is subjected at the time of the taking. This is true because economic demands normally result in an owner's putting his land to the most advantageous use."[29] When a condemnee[30] attempts to claim that the highest and best use for the property taken is something other than what the property is currently used for, the Fifth Circuit has held that the burden is on the condemnee to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that

---

[23] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty. Fla.*, 605 F.2d 762, 780 (5th Cir. 1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).

[24] *Id.* (internal quotation marks and quotation omitted); *accord United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking contemporaneously paid in money."); 5th Cir. Pattern Civ. Jury Instruction 13.3 (2014) (internal quotation marks omitted) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both sides are fully informed about all the advantages and disadvantages of the property, and neither side is acting under any compulsion to buy or sell.").

[25] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty.*, 605 F.2d 762, 798 (5th Cir. 1979).

[26] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.*, 680 F.2d 388, 395 (5th Cir. 1982)

[27] *320.0 Acres*, 605 F.2d at 798 & n.64.

[28] *8.41 Acres*, 680 F.2d at 394; *see United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").

[29] *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).

[30] *See Condemnee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("One whose property is expropriated for public use or taken by a public-works project.").

"there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[31] When a taking acquires only a portion of the landowner's property, the Fifth Circuit "requires the exclusive use of the before-and-after method of valuation."[32] This method "computes damages as the value of the actual land taken plus the diminution in the value of the remaining land in the parent tract . . . [e]quivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking."[33] In simpler terms, "[u]nder the before-and-after rule, the value of the entire tract is found prior to the taking, the value of the remainder is evaluated after the taking, and the difference equals the amount to which the owner is entitled."[34]

"Considerations that may not reasonably be held to affect market value are excluded."[35] These considerations include special or sentimental value to the condemnee, the change in value of separate tracts that are affected by the taking,[36] appraisal and attorneys' fees, loss of profits,

---

[31] *320.0 Acres of Land*, 605 F.2d at 814; *accord United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par.*, 953 F.2d 886, 890 (5th Cir. 1992) ("Potential uses must overcome a presumption in favor of the existing use. A landowner can overcome this presumption only by showing a reasonable probability that the land is adaptable and needed for the potential use in the near future.").

[32] *8.41 Acres*, 680 F.2d at 392 n.5; *cf. United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 632 (1961) ("[T]he court adopted an acceptable method of appraisal, indeed the conventional method, in valuing what was acquired by the Government by taking the difference between the value of the property before and after the Government's easement was imposed."); *United States v. 4.27 Acres of Land*, 271 F. App'x 424, 425 (5th Cir. 2008) ("The normal procedure for awarding compensation for an easement is to determine the highest and best use of the entire acreage within the property lines of the parent tract and then to calculate the difference between the market value of the tract before and after the taking.").

[33] *8.41 Acres*, 680 F.2d at 392 n.5 (quoting *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969)).

[34] *United States v. 12.94 Acres of Land in the Cty. of Solano*, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009).

[35] *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted).

[36] *See United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Par.*, 616 F.2d 762, 772 (5th Cir. 1980) (holding that a landowner is entitled only to recover for the actual condemnation and not for any theory of damages to remaining land or damages that will be incurred in the future).

damage to goodwill, and the expense of relocation or other consequential losses.[37] "The burden of establishing the value of the land sought to be condemned [rests] with the landowner."[38]

### 2. *Expert Opinion Admissibility*

"[P]reliminary factual and legal issues are the Court's responsibility under Rule [71.1(h)], whether trial is had before a jury or a commission."[39] Under Federal Rule of Evidence 104(a), the Court must undertake a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[40] "The gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1. While the jury tries issues of valuation, the trial judge must screen the proffered" evidence.[41] Under Federal Rule of Evidence 702, the Court may only admit expert testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"Under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[42] "[E]xpert testimony 'must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts

---

[37] *Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 247–48 (3d Cir. 2019) (collecting United States Supreme Court cases).

[38] *United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par., La.*, 953 F.2d at 890 (5th Cir. 1992) (citing *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273–76 (1943)).

[39] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty.*, 605 F.2d 762, 827 (5th Cir. 1979).

[40] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

[41] *United States v. 33.92356 Acres of Land, More or Less, in Vega Baja*, 585 F.3d 1, 8 (1st Cir. 2009).

[42] *Daubert*, 509 U.S. at 589; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotation omitted) (holding the Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

and the conclusion, *et alia.*' 'Where the expert's opinion is based on insufficient information, the analysis is unreliable.'"[43] Expert opinions that are unsupported, self-contradicted, or assumptive are to be excluded.[44] "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered,"[45] but there is no formula for determining whether expert testimony is reliable or unreliable "and the court must judge admissibility based on the particular facts of the case."[46] "Certain more specific factors, such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community . . . might prove helpful in determining the reliability of a particular scientific 'theory or technique.'"[47] The proponent of the proffered expert testimony "must prove by a preponderance of the evidence that the testimony is reliable" and cannot rest on generic assurances.[48] However, the proponent "need not prove to the judge that the expert's testimony is correct"[49] and the Court should "approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions."[50] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[51] This is especially true in a land condemnation cases, because the Fifth Circuit has instructed:

---

[43] *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 662 (E.D. La. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) *and then Paz v. Brush Eng'd Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009)).

[44] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

[45] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.*

[46] *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010).

[47] *Kumho Tire Co.*, 526 U.S. at 141 (quoting *Daubert*, 509 U.S. at 593–94).

[48] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

[49] *Id.*

[50] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987); *see Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

[51] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo*, 826 F.2d at 422).

The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder. . . . Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.[52]

"The court should ensure that the opinion comports with applicable professional standards outside the courtroom and that it will have a reliable basis in the knowledge and experience of the discipline,"[53] but an expert report or opinion need not be in lockstep with the common or prevailing standard to be admissible.[54] "[I]f suitability for a particular use might reasonably affect fair market value in the sense that a just compensation award based in part upon the potential for that use would not be invalid as a matter of law then evidence pertaining to that use must be admitted for consideration by the trier of fact."[55]

**b.   Analysis**

Plaintiff United States seeks to exclude Defendant's expert's opinion and appraisal report because the United States contends: "(1) it lacks a credible market analysis, (2) it omits a larger

---

[52] *Id.* at 1077–78 (quoting *United States v. 68.94 Acres of Land, More or Less, Situate in Kent Cty.*, 918 F.2d 389, 393 (3d Cir. 1990)).

[53] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (internal quotation marks and alteration omitted).

[54] *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010). The United States argues that this holding is inapplicable because it was reached in a case in which the district judge was the factfinder and the *Daubert* exclusion principles were less essential, Dkt. No. 49 at 6 n.4, but the United States cites no authority that an expert appraisal opinion must accord with prevailing standards and the Supreme Court has expressly rejected that argument. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993) ("Nothing in the text of this Rule establishes 'general acceptance' as an absolute prerequisite to admissibility.").

[55] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty.*, 605 F.2d 762, 817 (5th Cir. 1979); *see id.* at 815 ("[I]f the landowner's evidence is sufficient to show that a prospective use is feasible and reasonably probable, the landowner is then entitled to have that evidence considered by the jury (or the commission)."); *McCandless v. United States*, 298 U.S. 342, 346 (1936) ("An offer of proof cannot be denied as remote or speculative because it does not cover every fact necessary to prove the issue.").

parcel analysis, and (3) it contains a flawed highest and best use analysis," and it "employs an inappropriate methodology to arrive at an inflated valuation figure."[56]

### 1.   *Whether Defendant's Expert Lacks a Credible Market Analysis*

The United States argues that the expert's, Director Mike Miggins's, appraisal report lacks a credible analysis of the surrounding market and likely demand for the Subject Property. "For example, it may be physically possible and legally permissible to construct an office building on a property but, if there is no market demand for such as use, then it cannot be considered the property's highest and best use."[57] The United States contends that Defendant's expert report falls "short of the requirements for market analysis because these sections fail to identify the characteristics that directly influence the Subject Property's market value" and lacks analysis of how the area's atmosphere (its demographics and economic data) "directly affects the market value of the Subject Property."[58] Defendant responds that Mr. Miggins did show "the characteristics of the area and neighborhood that directly influence the subject property."[59]

The Court agrees with Defendant. The United States admits that "[a]pproximately 8.510 acres along the northern boundary of the Subject Property has been encumbered by a lease with H.E.B. Grocery ("HEB") since 2003; however, this land remains vacant."[60] When Plaintiff quizzed Mr. Miggins about this lease, Mr. Miggins testified that the lease "tells me that this property is desirable for commercial development by -- as deemed by the most prolific and popular grocer in Texas. And so they have made a business decision to lease this property and continue to pay lease payments on this property even with the uncertainty of the border barrier.

---

[56] Dkt. No. 49 at 2, ¶ 2.
[57] Dkt. No. 49 at 10, ¶ 20 (citing *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962)).
[58] *Id.* ¶¶ 20–21.
[59] Dkt. No. 52 at 10–11, ¶ 14.
[60] Dkt. No. 49 at 2, ¶ 3.

And so to me that shows a certain amount of desirability for the property for that tenant."[61] Mr. Miggins further explained that HEB's willingness to pay $20,000 per month for the lease indicated the property's value.[62] It also indicates the property's feasibility for mixed-use development, which factored into Mr. Miggins's analysis.[63] In his report, Mr. Miggins included an "Area Analysis" that discussed the population, income, education, employment, location, land use, growth patterns, access, and demographics.[64] The Court does not find Mr. Miggins's expert report or opinion in respect of a market analysis to be so lacking in sufficient facts or data or reliable principles and methods as to be stricken,[65] particularly given the hesitancy the Court should exercise to exclude an expert.[66]

The Court's holding is consistent with nonbinding but persuasive out-of-Circuit authority. Recently, the Eleventh Circuit rejected the Tennessee Valley Authority's argument that a landowner's lack of a "market study" supporting one potential highly-valued best use of the subject property should lead the Court to reject the landowner's expert evidence because the court saw "no reason why the jury could not have credited [the landowner's expert's] testimony" regarding the highest and best use of the subject property.[67] The Court is unpersuaded by the United States' argument that, because Mr. Miggins' expert report does not analyze the market factors in the way the United States believes it should, that the expert opinion is therefore inadmissible rather than simply subject to attack on credibility and thoroughness.

2. *Whether Defendant's Expert Omits a Larger Parcel Analysis and Commits a Flawed Highest and Best Use Analysis*

---

[61] Dkt. No. 52-2 at 70:13–20.
[62] *Id.* at 70:24–25.
[63] *Id.* at 65–66.
[64] Dkt. No. 49-1 at 17–20.
[65] *See* FED. R. EVID. 702.
[66] *See supra* notes 52, 55.
[67] *United States v. Easements & Rights-of-Way Over a Total of 15.66 Acres of Land, More or Less, in Gordon Cty.*, 779 F. App'x 578, 584–86 (11th Cir. 2019).

The highest and best use of the whole parcel of land is a relevant appraisal consideration. Because the larger parcel and highest and best use issues shade into each other and involve similar arguments, the Court considers them together.

The "larger parcel analysis" is relevant when a strip of land is condemned by eminent domain and thereby affects a larger tract, so the Court subtracts the fair market value of what remains after the taking from the fair market value of the former entire parcel to determine just compensation.[68] "When applicable, the issue of unity or separateness of tracts is a question of fact to be presented to the trier of fact. Three factors are particularly helpful in ascertaining whether property taken is part of a single, larger tract: physical contiguity, unity of ownership, and unity of use."[69] The United States contends "Miggins failed to conduct a larger parcel analysis. A larger parcel analysis is essential in analyzing a property's highest and best use and critical for proper determination of just compensation."[70] Defendant responds that Mr. Miggins adequately considered all larger parcel issues, including the flood zone issues that affect at least part of the tract.[71]

With respect to the "highest and best use analysis," the United States argues that, "had Miggins actually analyzed physically possible and legally permissible uses of the Subject Property, the discussion would have included an evaluation of the floodplain and its impact on the Subject Property."[72] Because the International Boundary and Water Commission controls construction that may impact Rio Grande River floodwaters, the United States contends Mr. Miggins's failure to discuss the Commission's restrictions in the appraisal report "significantly

---

[68] *See supra* notes 31–32.
[69] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.*, 680 F.2d 388, 393 (5th Cir. 1982) (citations omitted).
[70] Dkt. No. 49 at 8, ¶ 17.
[71] Dkt. No. 52 at 8–9, ¶ 11.
[72] Dkt. No. 49 at 9, ¶ 19.

impair the highest and best use conclusion."[73] Defendant responds that Mr. Miggins's analysis adequately took account of all highest and best use factors.[74]

Mr. Miggins testified at length as to his understanding and consideration of relevant larger parcel factors, including "unity of use, unity of ownership, and contiguity."[75] Mr. Miggins also testified at length as to how the floodplain factored into his opinion, including the impact on comparable sales.[76] Nevertheless, Plaintiff emphasizes a specific exchange in Mr. Miggins's deposition wherein the assistant United States attorney asked Mr. Miggins how the International Boundary and Water Commission restricted the use of the larger parcel. Mr. Miggins admitted that the Commission could impact development on the land, upon which the assistant United States attorney queried, "And did you reference the IBWC and the restriction -- their restrictions of the floodplain anywhere in your report?"[77] Mr. Miggins conceded, "I don't think I referenced the IBWC in my report, no."[78] However, although his expert report concludes that "no . . . known easements, encroachments, covenants, conditions or restrictions impacting the site . . . are considered to affect the marketability or highest and best use,"[79] the key language here is "considered to affect." The Commission's specific impact on development or marketability of the property is unknown and speculative. Neither Mr. Miggins nor the United States says what the Commission will or will not allow. Mr. Miggins acknowledged that the Commission may impact development,[80] and his expert report acknowledges that the "largest southern portion of the property appears to be" in a flood zone.[81] If the United States believes the International

---

[73] *Id.*
[74] Dkt. No. 52 at 8–10, ¶¶ 11–13.
[75] Dkt. No. 52-2 at 43:22–46:18.
[76] *See* Dkt. No. 52-2 at 46–47, 51, 54–58, 97–100.
[77] Dkt. No. 52-2 at 46:19–47:18.
[78] *Id.* at 47:19–20.
[79] Dkt. No. 49-1 at 22.
[80] Dkt. No. 52-2 at 47:5–15.
[81] Dkt. No. 49-1 at 22.

Boundary and Water Commission should have figured a larger role in Mr. Miggins's analysis and conclusion, the expert report and opinion are subject to attack on credibility, not their admissibility.

Plaintiff United States also argues that Mr. Miggins's analysis "fails to consider the physically possible and legally permissible uses of the Subject Property" which results in a flawed highest and best use opinion.[82] The United States points to the expert's failure to acknowledge an HEB lease on the subject property, which restricts use of the whole parcel.[83] Defendant responds only that the HEB lease proves the demand for mixed-use development over the Subject Property.[84] The relevant testimony is as follows:

> Q. [by the assistant United States attorney] And what about legally per -- under the Legally Permissible section, what about the use restrictions that the H-E-B lease imposes on the subject property? Did those factor into your analysis?
>
> A. [by Mike Miggins] They did. And to me they -- they confirm to me the exact spot where you would put a commercial development of that sort on the property. The use restrictions that are in the H-E-B lease are very typical for any anchor tenant. You know, H-E-B would be considered an anchor tenant. You know, others like Walmart or Home Depot, things like that, in my experience as a broker and in the development world seeing leases like that with those restrictions are very, very common and not prohibitive. So to me -- to me it was not an impediment. In fact, it confirms for me the desirability of that property from a commercial standpoint.
>
> Q. But you didn't include that in your report.
>
> A. Tell me what you mean by "that."
>
> Q. Well, that anything about the H-E-B lease that you just described to me -- is that in your report?
>
> A. The H-E-B lease is not in my report. But on the top of Page 21, Bates stamp 21, where I talk about, you know, easements and encroachments and restrictions, et cetera, the last sentence of that top paragraph: There are no other known easements, encroachments, covenants, conditions or restrictions impacting the site that are considered to affect the marketability or highest and best use. So I don't think -- I think the H-E-B lease is wonderful and I don't think it impacts the marketability or highest and best use of the property. In fact, it confirms how

---

[82] Dkt. No. 49 at 9, ¶ 19.
[83] Id.
[84] Dkt. No. 52 at 11, ¶ 14.

desirable that area is and how at least the biggest grocer in Texas wanted it and, more importantly, wanted to make sure nobody else got it.

Q. So if you believe that, why didn't you put anything about the H-E-B lease in your report?

A. Well, I didn't have a copy of the lease to reference. So I didn't specifically reference the H-E-B tenant and lease. Again, it's a fee-simple -- a fee-simple value of the property unencumbered by lease. I didn't feel like this lease encumbered the property, and so I didn't reference it.

Q. Does the fact that the H-E-B lease only -- does the fact the H-E-B lease is only approximately -- I don't know -- 8 to 0 acres, maybe, of the subject property -- does that affect the legally permissible use of the rest of the property?

A. No. Well, other than the -- other than the restrictions for tenant use. And, like I mentioned, to the west there's a restriction on manufactured housing. But there's not a restriction on the south to manufactured housing. So to the extent those things we've already discussed, no, it doesn't.

Q. And you don't mention those use restrictions in the legally permissible analysis in your highest and best use, do you?

A. I don't.[85]

The Court agrees with the United States that Mr. Miggins's failure to consider the HEB lease casts doubt on the reliability of his expert opinion. The expert's *ipse dixit* that he adequately considered the HEB lease is insufficient.[86] The expert report opines, "[t]here are no other known easements, encroachments, covenants, conditions or restrictions impacting the site that are considered to affect the marketability or highest and best use,"[87] but Mr. Miggins admitted in his testimony that the HEB lease impacted both the marketability of the Subject Property *and* that the lease restricted the permissible uses of the property. The Court will consider this injury to Defendant's expert's reliability in the context of the United States' other attacks.

   3.   *Whether Defendant's Expert Employs an Inappropriate Methodology*

---

[85] Dkt. No. 52-2 at 65:16–67:23.
[86] *See supra* notes 45, 48; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 277 (5th Cir. 1998) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").
[87] Dkt. No. 49-1 at 22.

The United States contends Defendant's expert "develops an opinion of value using the improper state rule method of valuation."[88] Because Mr. Miggins failed to perform a before-and-after valuation as required in the Fifth Circuit,[89] the United States argues his valuation lacks factual support.[90] Defendant responds that this is a manufactured disagreement, that the methods are equivalent and lead to the same result, and that Mr. Miggins's analysis in any case shows that he correctly computed just compensation using the required methodology.[91]

The Fifth Circuit offers ample guidance on the differences between these two appraisal methodologies:

> [There are] at least two methods by which just compensation in partial taking cases can be ascertained. The first is the before-and-after method of valuation, which computes damages to be the difference in the value of the entire parent tract before the taking and the value of the portion remaining after the taking. The second method computes damages as the value of the actual land taken plus the diminution in the value of the remaining land in the parent tract. Both methods take into consideration the loss of the part taken and "severance damages" to the remainder of the property left after the taking. The Fourth Circuit [and Texas law] allows use of the second method. *United States v. 97.19 Acres of Land, More or Less*, 582 F.2d 878, 881 (4th Cir. 1978). . . . The applicable federal law in the Fifth Circuit, however, requires the exclusive use of the before-and-after method of valuation.[92]

In other words, both approaches account for the same calculations. The Fourth Circuit case cited explains: "this circuit measures damages as the fair market value of the parcel actually taken *plus* the severance damages, if any, to the portion of the tract retained by the landowner."[93] So "the 'before-and-after' approach and the 'value-plus-severance' approach are in substance just different ways of expressing the same idea: that the landowner in a partial takings case is entitled

---

[88] Dkt. No. 49 at 11, ¶ 22.
[89] *See supra* notes 32–33.
[90] Dkt. No. 49 at 11, ¶ 23.
[91] Dkt. No. 52 at 12–13, ¶¶ 16–18.
[92] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.* 680 F.2d 388, 392 n.5 (5th Cir. 1982).
[93] *United States v. 97.19 Acres of Land, More or Less, in Montgomery, Wash. & Alleghany Ctys.*, 582 F.2d 878, 881 (4th Cir. 1978) (emphasis added).

to just compensation for the lost value to all of his land, not just the parcel actually taken."[94] As the Middle District of Florida put it, "[t]he landowners discuss the 'taking-plus-damages' valuation method and the 'before-and-after' method as if they are competing standards. They are not. Rather, the 'before-and-after' method is simply part of the 'taking-plus-damages' standard."[95] The foregoing analysis is consistent with Mr. Miggins's testimony: "Well, I'll tell you the Federal rule is a simpler way to do the state rule. The state rule is more complicated. It can be more -- a lot more complicated. And there's some other nuance to it."[96]

Defendant has demonstrated the two appraisal methods are functionally equivalent. Mr. Miggins testified that the state rule and the before-and-after method "would result in the same compensation estimate."[97] In Mr. Miggins's expert report summary, he estimates the value of the "Whole Property Before Acquisition" and the "Remainder After Acquisition" and subtracts the latter from the former to arrive at "Total Compensation."[98] The United States' core argument is that Mr. Miggins's valuations are factually unsupported because he did not "perform an appraisal under both methodologies and compare the results."[99] But the United States "fail[ed] to tie its claims about the controlling law to any specific difference in outcomes in damages evaluation."[100] The Court is unpersuaded that, had Mr. Miggins performed only a before-and-after valuation, he would have arrived at any different numbers, or that the method Mr. Miggins used is substantively different than the before-and-after method. The only case the United States cited in support, in which the expert appraisal opinion used neither of the recognized two

---

[94] *United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cty.*, 140 F. Supp. 3d 1218, 1245 (N.D. Ala. 2015) (citing *Slattery Co. v. United States*, 231 F.2d 37, 44 (5th Cir. 1956)).
[95] *Sabal Trail Transmission, LLC v. 0.589 Acres of Land in Hamilton Cty.*, No. 3:16-CV-277-J-34JBT, 2018 WL 3655556, at *9, 2018 U.S. Dist. LEXIS 129709, at *28 (M.D. Fla. Aug. 2, 2018).
[96] Dkt. No. 52-2 at 121:1–4.
[97] Dkt. No. 52-2 at 121:9–10.
[98] Dkt. No. 49-1 at 50.
[99] Dkt. No. 49 at 11, ¶ 23.
[100] *Vector Pipeline, L.P. v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 952 (N.D. Ill. 2001).

approaches and was consequently rejected by the Eastern District of California, is distinguishable.[101] The Court finds Mr. Miggins's appraisal methodology in this respect is not unreliable or inadmissible.

The United States next argues that "Miggins failed to offer any further support or explanation to justify his opinion of $25,000 per acre for the Subject Property."[102] Mr. Miggins's expert report concludes, "it is our opinion that the unit value of $25,000 per acre is appropriate for the Whole Property."[103] Defendant responds that Mr. Miggins's conclusion was factually supported by a valid sales comparison approach.[104]

Mr. Miggins's expert report explains that "[e]ach of the comparable sales listed in the adjustment grid were compared to the Whole Property and ranked for various transactional and physical elements, when considered applicable. The following exhibit summarizes the rankings for each of the sales comparables that were considered based upon their overall comparability to the Whole Property."[105]

| RECONILIATION (RANKING ANALYSIS) | | | |
|---|---|---|---|
| Sale No. | Size | $ Per AC | Overall Comparability |
| 3 | 8.826 | $317,245/AC | Superior |
| 2 | 12.520 | $51,917/AC | Superior |
| Subject | 144.3800 | $25,000/AC | - |
| 5 | 126.000 | $11,905/AC | Inferior |
| 1 | 17.414 | $7,994/AC | Inferior |
| 6 | 451.570 | $7,508/AC | Inferior |
| 4 | 73.500 | $4,762/AC | Inferior |
| Compiled by CBRE | | | |

---

[101] *See United States v. 12.94 Acres of Land in the Cty. of Solano*, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009).
[102] Dkt. No. 49 at 13, ¶ 27.
[103] Dkt. No. 49-1 at 43.
[104] Dkt. No. 52 at 13–14, ¶¶ 19–20.
[105] Dkt. No. 49-1 at 43.

Case 7:08-cv-00202   Document 54   Filed on 08/31/20 in TXSD   Page 18 of 21

The United States takes issue with the $25,000 per acre number. The relevant testimony is as

follows:

> Q. (By Ms. Eyes) Mr. Miggins, I'd like to point your attention to Bates stamp
> Page 42 of your report.
>
> A. Okay.
>
> Q. The reconciliation table that you have here, why -- how did you come up with
> $25,000 an acre versus something between 51,917 down to 11,905?
>
> A. Well, after the -- after the adjustment process, I ranked the properties in order -
> - in value order and -- and I sorted them based on overall comparability. And
> when I did that, it shows that Sales 3 and 2 being superior and Sales 5, 1 and -- 5,
> 1, 6, and 4 as inferior. So then when you look at what that does, is it creates a
> bracket of the range that you just mentioned, 51,917 on the high end and 11,905
> on the low end.
>
> And my opinion is 25,000. I mean, at a certain point what appraisers have to do
> with -- after all the art and after all the science, I have to render an opinion of
> value. And so what I've done there is I -- my opinion is 25,000, which is lower --
> lower than just averaging those together. If I averaged those together, they would
> be around 31,000 an acre. And I think we need to be on the lower end of that
> range. And so 25,000 I think is the right -- is the right number. And I think that's
> the value.
>
> Q. And so just so that I understand it, the basis for 25,000 is you take the average
> of the bracket and you go slightly below to I guess err on the side of caution.
>
> A. Well, I wouldn't say that that's the exact method. But what I -- after the
> adjustment process what that leaves me with is a range between 11,9 and 51,9.
> And my opinion is within that range. I think it's important to be within the range.
> And I'm slightly below the average. So those are just -- those are just facts relative
> to my opinion. That's not why I chose it, if that makes sense.
>
> Q. Okay. So is there anything in your report that you can point to that would
> support your choice of 25,000 an acre versus 14,000 which would still be within
> that bracket?
>
> A. No. My opinion is 25,000 an acre. It's bracketed by Sales 2 and 5 after my
> adjustment process.[106]

Pointing to this testimony, the United States contends Mr. Miggins failed to factually support or

justify the $25,000 per acre number so his opinion should be excluded.[107]

---

[106] Dkt. No. 52-2 at 107:20–109:12.
[107] Dkt. No. 49 at 13, ¶ 27.

18 / 21

The Court disagrees. The sales comparison approach complies with the prevailing standard for expert appraisals, the Uniform Standards of Professional Appraisal Practice.[108] It is a widely used and generally accepted standard.[109] "[R]eliable results can usually be obtained by bracketing the subject between comparable properties that are superior and inferior to it."[110] The United States appears to be attacking Mr. Miggins's assessment of $25,000 per acre as arbitrary when $14,000 per acre could also have been selected within the bracket, but this attack amounts to a complaint that appraisals are not capable of mathematical precision. "[T]here are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking."[111] Appraisals are "more an art than a science; it is incapable of mathematical precision and implicates methods of judgment."[112] Mr. Miggins's judgment rests on comparable sales; it is not invented out of whole cloth. Accordingly, the United States' attack goes to Defendant's expert's factual credibility, not admissibility. Mr. Miggins's valuation would inevitably rest on his judgment in any case. That Mr. Miggins ultimately chose a number does not signify that his expert opinion is inadmissible.

The United States last argues that Mr. Miggins's conclusion that the "entire 22.1730 acres south of the government's acquisition has a 'diminution in value resulting from a loss in marketability and/or being a non-economic unit and that therefore, the south remainder will be

---

[108] *Buchanan Energy (N), LLC v. Lake Bluff Holdings, LLC*, No. 15 CV 3851, 2017 U.S. Dist. LEXIS 51403, at *15 (N.D. Ill. Apr. 4, 2017).
[109] *See United States ex rel. Tenn. Valley Auth.*, No. 4:16-CV-0325-HLM, 2019 U.S. Dist. LEXIS 230392, at *20 (N.D. Ga. Jan. 28, 2019).
[110] *McCann Holdings, Ltd. v. United States*, 111 Fed. Cl. 608, 623 (2013) (quotation omitted).
[111] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty.*, 80 F.3d 1074, 1077–78 (5th Cir. 1996) (quoting *United States v. 68.94 Acres of Land, More or Less, Situate in Kent Cty.*, 918 F.2d 389, 393 (3d Cir. 1990)).
[112] *United States v. 0.376 Acres of Land*, 838 F.2d 819, 825 (6th Cir. 1988) (quoting *United States v. 1,378.65 Acres of Land, More or Less, Situate in Vernon Cty.*, 794 F.2d 1313, 1318–19 (8th Cir. 1986)).

discounted 95%'" is factually unsupported.[113] The United States points to Mr. Miggins's deposition testimony:

> In all of my research in that Rio Grande Valley area I could not find any -- any significant amount of data to provide a comp set for me to analyze for this remainder property. And so what that -- what that shows me is that there's very little value there at all. And so I kept a remainder value of 5 percent because there's still -- there are still some property rights associated with that remainder south that belong to the property owner and to me that represents at best 5 percent of the previous rights -- previous value.[114]

Defendant responds that "[a] discount of around 95% is an appropriate and accepted way to account for the very limited value remaining in such property."[115]

The United States offers no counterargument that a 95% discount is inappropriate. Indeed, the United States' own expert applied a 96% discount to the "uneconomic remnant" of a condemned property in a 2015 case.[116] Furthermore, Mr. Miggins's testimony indicates that there are no factual anchors for the value of the remainder property because it is economically undesirable, so the Court does not find a 95% discount for the remainder property to be unreasonable or unreliable.

---

[113] Dkt. No. 49 at 13, ¶ 28 (quoting Dkt. No. 49-1 at 48).
[114] Dkt. No. 52-2 at 122:10–20.
[115] Dkt. No. 52 at 15, ¶ 21.
[116] *United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cty.*, 140 F. Supp. 3d 1218, 1247 (N.D. Ala. 2015).

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court finds Defendant's expert, Mike Miggins, offers relevant and reliable expert opinions with respect to a market analysis, a larger parcel analysis, comparable sales, per acre valuation of the Subject Property, and appraisal of the remainder property after the taking. The Court also finds Mr. Miggins uses an adequate and admissible before-and-after calculation methodology. Although the Court finds that Mr. Miggins's failure to account for the HEB lease on the property impairs his reliability, the Court does not find this one factor to be sufficient in itself to wholly exclude Mr. Miggins's report and opinion testimony, particularly given the dire ramifications that conclusion would have to the Defendant landowner's case and to the factfinder in assessing relevant evidence on just compensation.[117] Accordingly, the Court **DENIES** the United States' motion.[118] The expert testimony, reports, and opinions of Mike Miggins will not be excluded from trial.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 31st day of August 2020.

_____
Micaela Alvarez
United States District Judge

---

[117] *See supra* note 52 (counseling caution before excluding experts in eminent domain cases).
[118] Dkt. No. 49.